IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> ) <br> (1) TIAWANA BROWN, ) <br> (2) TIJEMA BROWN, ) <br> (3) ANTIONETTE ROUSE, ) <br> ) <br> Defendants. ) <br> ) <br> _____ ) | DOCKET NO. 3:25-CR- 106-KDB <br><br> **BILL OF INDICTMENT** <br><br> Violations:    18 U.S.C. § 1343 <br>                 18 U.S.C. § 1349 |

THE GRAND JURY CHARGES:

At the specified times and at all relevant times:

### Introduction

1. TIAWANA BROWN, TIJEMA BROWN, and ANTIONETTE ROUSE, the Defendants, were full-time or part-time residents of Mecklenburg County, North Carolina, within the Western District of North Carolina. TIAWANA BROWN was the mother of TIJEMA BROWN and ANTIONETTE ROUSE.

2. Between April 2020 and September 2021, TIAWANA BROWN, TIJEMA BROWN, and ANTIONETTE ROUSE conspired to execute a wire fraud scheme to defraud the Small Business Administration's (SBA) Economic Injury Disaster Loan (EIDL) program and its Paycheck Protection Program (PPP) to obtain COVID-19 pandemic relief funds through the submission of loan applications containing false information or false documentation. The false documentation generally included fake and fraudulent tax forms that lied about gross income and number of employees, among other misrepresentations. Defendants also submitted false statements for PPP loan forgiveness. Defendants submitted at least fifteen applications for EIDL or PPP funds.

3. The Defendants obtained at least approximately $124,165 in funds from their fraudulent EIDL and PPP loans. Defendants used the fraudulently obtained pandemic relief funds on, among other things, personal expenses, in violation of the terms of the EIDL program and the PPP. Approximately one month after receiving $20,833 in PPP loan proceeds, TIAWANA BROWN spent approximately $15,000 for a birthday party for herself.

## The CARES Act, EIDL, and PPP

4.  On March 13, 2020, the President declared an emergency under Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act in response to coronavirus disease 2019 (COVID-19). On March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and Economic Security (CARES) Act, which was designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. The CARES Act established several new temporary programs and provided for the expansion of others, including programs created and/or administered by the SBA to administer the emergency relief.

5.  One of the programs expanded by the CARES Act was the EIDL program, which was an SBA program that provided low-interest financing to qualifying small businesses in regions affected by declared disasters.

    a.  EIDL proceeds could only be used for working capital for the small businesses to alleviate economic injury caused by the disaster (related to the COVID-19 pandemic) occurring in the month of January 2020 and continuing thereafter.

    b.  EIDL funds were issued directly from the United States Treasury, and an applicant applied on behalf of their qualifying business through the SBA via an online portal. In the electronic application, the applicant certified that all of the information in the application was true and correct to the best of the applicant's knowledge and was warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties. The application also stated that the SBA relies upon the self-certifications in the EIDL application in determining whether the applicant was eligible for an EIDL.

    c.  The EIDL application process collected information concerning the business and the business owner, including information regarding the business's gross revenue for the 12-month period preceding the disaster, which for COVID-19 was defined as January 31, 2020; the cost of goods sold for the 12-month period preceding the disaster; the number of employees employed by the business at the time of the disaster; information as to the criminal history of the business owners; and information regarding anyone that assisted in the preparation of the application.

6.  Another source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the PPP.

    a.  In order to obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.

2

In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

        b.     A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While the lender issued the PPP loan, the SBA provided a guarantee that the financial institution would be reimbursed. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

        c.     PPP loan proceeds were required to be used by the business on certain permissible business expenses such as payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business represented, under penalty of perjury, that it spent the loan proceeds on these expenses within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

### Fraudulent EIDL Applications Submitted by Defendants

7.     On or about June 25, 2020, TIAWANA BROWN submitted and caused to be submitted EIDL application *6408 to the SBA via an online submission in the name of a sole proprietorship business in the name TIAWANA BROWN. In the application, TIAWANA BROWN falsely represented that her business was a "personal services" business with 11 employees and $14,300 in gross revenues from 2019 that had operated since May 24, 2018. In the application, TIAWANA BROWN provided a social security number of a third party but represented that it was the social security number of TIAWANA BROWN. TIAWANA BROWN certified under penalty of perjury that the information in EIDL application *6408 was correct and that she would use the funds as directed by the EIDL program. The SBA rejected this loan application.

8.     On or about June 25, 2020, approximately 13 minutes after EIDL application *6408 was submitted to the SBA, TIJEMA BROWN submitted and caused to be submitted EIDL application *8889 to the SBA via an online submission in the name of a sole proprietorship business in the name TIJEMA BROWN. In the application, TJIEMA BROWN falsely represented that her business was a "personal services" business with 11 employees and $14,300 in gross revenues from 2019. EIDL applications *6408 and *8889 falsely represented that each business had the same address, the same number of employees, the same 2019 gross revenue, and the same business description, despite purporting to be two different businesses. TIJEMA BROWN certified under penalty of perjury that the information in EIDL application *8889 was correct and that she would use the funds as directed by the EIDL program. Upon receipt of EIDL application *8889, the SBA approved a $10,000 advance on the loan application. On or about June 30, 2020, the SBA wired $10,000 to a bank account in the name of TIJEMA BROWN ending in *2364 pursuant to the EIDL application.

9.     On or about June 26, 2020, the day after EIDL applications *6408 and *8889 were submitted, ANTIONETTE ROUSE submitted and caused to be submitted EIDL application *2483 to the SBA via an online submission in the name of a sole proprietorship business in the

3

name ANTIONETTE ROUSE. In the application, ANTIONETTE ROUSE falsely represented that her business was a "personal services" business with 12 employees and $11,300 in gross revenues from 2019 that had operated since April 16, 2018, at the same address as the prior applications. ANTIONETTE ROUSE certified under penalty of perjury that the information in EIDL application *2483 was correct and that she would use the funds as directed by the EIDL program. Upon receipt of EIDL application *2483, the SBA approved a $10,000 advance on the loan application. On or about June 30, 2020, the SBA wired $10,000 to a bank account in the name of ANTIONETTE ROUSE ending in *8475 pursuant to the EIDL application. On July 2, 2020, this EIDL application was rejected by the SBA due to a failure to substantiate an economic injury. EIDL applications *6408, *8889, and *2483 were all submitted to the SBA from the same IP address.

10. On or about August 31, 2020, Defendants submitted and caused to be submitted EIDL application *1392 to the SBA via an online submission in the name of a sole proprietorship business in the name La'Stephanie Brown. In the application, Defendants falsely represented that the business was a "health services" business with 5 employees and $134,000 in gross revenues from 2019 that had operated since March 3, 2017, at the same address as the three prior applications. La'Stephanie was the middle name of TIJEMA BROWN. On EIDL application *1392, in the name La'Stephanie Brown, Defendants provided TIJEMA BROWN's social security number, TIJEMA BROWN's bank account ending in *2364, and TIAWANA BROWN's phone number. Defendants certified, as "La'Stephanie Brown," under penalty of perjury that the information in EIDL application *1392 was correct and that they would use the funds as directed by the EIDL program. The SBA rejected this loan application.

11. The next day, on or about September 1, 2020, TIAWANA BROWN submitted and caused to be submitted EIDL application *1665 to the SBA via an online submission in the name of a sole proprietorship business in the name TIAWANA BROWN. In the application, TIAWANA BROWN falsely represented that her business was a "health services" business with 8 employees and $142,000 in gross revenues from 2019 that had operated since April 4, 2018. The information provided for this business by TIAWANA BROWN in EIDL application *1665 was inconsistent with the information provided for the same business in EIDL application *6408. TIAWANA BROWN certified under penalty of perjury that the information in EIDL application *1665 was correct and that she would use the funds as directed by the EIDL program. The SBA rejected this loan application. EIDL applications *1392 and *1665 were submitted to the SBA from the same IP address.

12. On or about August 17, 2021, TIJEMA BROWN submitted and caused to be submitted EIDL application *7105 to the SBA via an online submission in the name of a sole proprietorship business in the name TIJEMA BROWN. In the application, TJIEMA BROWN represented that her business was a "entertainment services" business with 2 employees and $15,500 in gross revenues from 2019 that had operated since May 25, 2017. TIJEMA BROWN certified under penalty of perjury that the information in EIDL application *7105 was correct and that she would use the funds as directed by the EIDL program. The SBA rejected this loan application.

## Tijema Brown's PPP Loan Applications

13. Lender 1 was California-based a small business lending company. Lender 1 participated in the SBA's PPP as a lender and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

14. On or about April 3, 2021, TIJEMA BROWN submitted and caused to be submitted a PPP application for a loan numbered *8703 to Lender 1.

   a. In the application materials, TJIEMA BROWN falsely stated that she operated a sole proprietorship business in her own name that was established on January 1, 2020, which generated $106,600 in gross income in 2019.

   b. As part of the application, TIJEMA BROWN submitted and caused to be submitted a fake 2019 Internal Revenue Service (IRS) Schedule C Form for the purported business. The fake Schedule C Form was in the name of TIJEMA BROWN under the business name Givin Looks By Jema. The form falsely stated that Givin Looks By Jema earned $106,600 in gross receipts and had $10,350 in expenses, resulting in $96,250 in net profits in 2019. This form was fake, as it was never filed with the IRS.

   c. In her application, TIJEMA BROWN stated that she would use the loan funds to pay payroll costs. TIJEMA BROWN certified under penalty of perjury that the information in the PPP application was true and correct.

   d. As a result of PPP loan *8703, Lender 1 wired $20,833 in PPP loan funds to TIJEMA BROWN to her bank account ending in *2364 on April 16, 2021.

   e. On or about August 20, 2021, the SBA reimbursed Lender 1 and forgave TIJEMA BROWN for this loan based on TIJEMA BROWN's false representation under penalty of perjury that she spent $12,500 of the loan funds on payroll costs for the purported business and complied with all applicable PPP rules, including those regarding the eligible uses of PPP loan proceeds.

15. On or about April 26, 2021, TIJEMA BROWN submitted and caused to be submitted a second draw PPP application for a loan numbered *8907 to Lender 1.

   a. The application materials contained the same false information and false documentation as PPP loan *8703 in the name TIJEMA BROWN and Givin Looks By Jema, including the fake 2019 IRS Schedule C Form in the name of Givin Looks By Jema.

   b. In her application, TIJEMA BROWN stated that she would use the loan funds to pay payroll costs. TIJEMA BROWN certified under penalty of perjury that the information in the PPP application was true and correct.

   c. As a result of PPP loan *8907, Lender 1 wired $20,833 in PPP loan funds to TIJEMA BROWN to her bank account ending in *2364 on May 10, 2021.

d.   On or about August 24, 2021, the SBA reimbursed Lender 1 and forgave TIJEMA BROWN for this loan based on TIJEMA BROWN's false representation under penalty of perjury that she spent $12,500 of the loan funds on payroll costs for the purported business and complied with all applicable PPP rules, including those regarding the eligible uses of PPP loan proceeds.

### Antionette Rouse's PPP Loan Applications

16.   Lender 2 was a Florida-based small business lending company. Lender 2 participated in the SBA's PPP as a lender and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

17.   On or about April 15, 2021, ANTIONETTE ROUSE submitted and caused to be submitted a PPP application for a loan numbered *8804 to Lender 2.

a.   In the application materials, ANTIONETTE ROUSE falsely stated that she operated a sole proprietorship business in her own name that was established on January 1, 2019, which generated $106,600 in gross income in 2019.

b.   As part of the application, ANTIONETTE ROUSE submitted and caused to be submitted a fake 2019 IRS Schedule C Form for the purported business. The fake Schedule C Form was in the name of ANTIONETTE ROUSE for a business with the same name. The form falsely stated that the business earned $106,600 in gross receipts and had $10,350 in expenses, resulting in $96,250 in net profits in 2019. This form was fake, as it was never filed with the IRS. This fake 2019 Schedule C Form was identical to the 2019 Schedule C Form submitted for PPP loan *8703 under the business name Givin Looks By Jema for TIJEMA BROWN, other than business identity information.

c.   In her application, ANTIONETTE ROUSE stated that she would use the loan funds to pay payroll costs. ANTIONETTE ROUSE certified under penalty of perjury that the information in the PPP application was true and correct.

d.   As a result of PPP loan *8804, Lender 2 wired $20,833 in PPP loan funds to ANTIONETTE ROUSE to her bank account ending in *8475 on May 4, 2021.

e.   On or about September 13, 2021, the SBA reimbursed Lender 2 and forgave ANTIONETTE ROUSE for this loan based on ANTIONETTE ROUSE's false representation under penalty of perjury that she spent $12,500 of the loan funds on payroll costs for the purported business and complied with all applicable PPP rules, including those regarding the eligible uses of PPP loan proceeds.

18.   Lender 3 was California-based a small business lending company. Lender 3 participated in the SBA's PPP as a lender and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

19. On or about May 20, 2021, ANTIONETTE ROUSE submitted and caused to be submitted a second draw PPP application for a loan numbered *9004 to Lender 3.

    a. The application materials contained the same false information and false documentation as PPP loan *8804 in the name ANTIONETTE ROUSE, including the fake 2019 IRS Schedule C Form in the name of ANTIONETTE ROUSE.

    b. In her application, ANTIONETTE ROUSE stated that she would use the loan funds to pay payroll costs. ANTIONETTE ROUSE certified under penalty of perjury that the information in the PPP application was true and correct. This loan was then transferred from Lender 3 to Lender 1.

    c. As a result of PPP loan *9004, Lender 1 wired $20,833 in PPP loan funds to ANTIONETTE ROUSE to her bank account ending in *8475 on June 4, 2021.

    d. On or about August 24, 2021, the SBA reimbursed Lender 1 and forgave ANTIONETTE ROUSE for this loan based on ANTIONETTE ROUSE's false representation under penalty of perjury that she spent $12,500 of the loan funds on payroll costs for the purported business and complied with all applicable PPP rules, including those regarding the eligible uses of PPP loan proceeds.

### Tiawana Brown's PPP Loan Application

20. On or about April 26, 2021, TIAWANA BROWN and TIJEMA BROWN submitted and caused to be submitted a PPP application for a loan numbered *8906 to Lender 1.

    a. In the application materials, TIAWANA BROWN and TIJEMA BROWN falsely stated that TIAWANA BROWN operated a sole proprietorship business in her own name that was established on January 1, 2020, which generated $106,600 in gross income in 2019.

    b. As part of the application, TIAWANA BROWN and TIJEMA BROWN submitted and caused to be submitted a fake 2019 IRS Schedule C Form for the purported business. The fake Schedule C Form was in the name of TIAWANA BROWN under the business name TC Collection. The form falsely stated that TC Collection earned $106,600 in gross receipts and had $10,350 in expenses, resulting in $96,250 in net profits in 2019. This form was fake, as it was never filed with the IRS. This fake 2019 Schedule C Form was identical to the 2019 Schedule C Forms submitted for PPP loan *8703 and PPP loan *8804 under the business names Givin Looks By Jema and ANTIONETTE ROUSE, respectively, other than business identity information.

    c. In the application, TIAWANA BROWN and TIJEMA BROWN stated that TIAWANA BROWN would use the loan funds to pay payroll costs. TIAWANA BROWN and TIJEMA BROWN certified under penalty of perjury that the information in the PPP application was true and correct.

d.      As a result of PPP loan *8906, Lender 1 wired $20,833 in PPP loan funds to TIAWANA BROWN to her bank account ending in *5776 on May 5, 2021. Account *5776 was a non-profit business checking account in the name of a non-profit entity named Beauty After The Bars and TIAWANA BROWN.

e.      On or about August 24, 2021, the SBA reimbursed Lender 1 and forgave TIAWANA BROWN for this loan based on TIAWANA BROWN's false representation under penalty of perjury that she spent $12,500 of the loan funds on payroll costs for the purported business and complied with all applicable PPP rules, including those regarding the eligible uses of PPP loan proceeds.

21.     Between April 2020 and September 2021, Defendants submitted at least three additional EIDL applications to the SBA in an unlawful attempt to fraudulently obtain program funds. Such EIDL applications contained misstatements similar to those set forth above.

22.     Defendants spent the vast majority of the PPP and EIDL funds on personal expenses, including purchases of Louis Vuitton merchandise. Approximately one month after receiving $20,833 in PPP loan proceeds from loan *8906, TIAWANA BROWN made approximately $15,000 in personal expenditures on a birthday party for herself using the Beauty After The Bars *5776 non-profit bank account, which contained the PPP loan funds. The party expenditures included approximately $3,500 for a venue, $5,000 in catering, $2,300 for photography and video, a balloon arch, a rose wall, a rented throne, and a horse-drawn carriage.

## COUNT ONE
(Wire Fraud Conspiracy – 18 U.S.C. § 1349)

23.     The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 22 of this Bill of Indictment and further alleges that:

24.     Beginning in or around April 2020 and continuing through in or around at least September 2021, in Mecklenburg County within the Western District of North Carolina and elsewhere, the Defendants,

(1) **TIAWANA BROWN,**
(2) **TIJEMA BROWN, and**
(3) **ANTIONETTE ROUSE**

did knowingly combine, conspire, confederate, and agree with one another to commit wire fraud in violation of Title 18, United States Code, Section 1343.

### *Object of the Conspiracy*

25.     It was a part and an object of the conspiracy that the named Defendants, with the intent to defraud, did knowingly and intentionally devise the above-described scheme and artifice to fraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, and for the purpose of executing such scheme and artifice to defraud, did transmit and cause to be transmitted by means

8

of wire communications in interstate commerce any writing, signal, picture, and sound, *to wit*, electronic loan and loan forgiveness applications to the SBA, Lender 1, Lender 2, and Lender 3, note documents to the same, wire transfers, and other electronic financial transactions, in violation of Title 18, United States Code, Section 1343.

### *Manner and Means*

26. The Defendants carried out the conspiracy through the manner and means described in paragraphs 1 through 22 of this Bill of Indictment, among others.

All in violation of Title 18, United States Code, Section 1349.

### COUNT TWO
(Wire Fraud – 18 U.S.C. § 1343)

27. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 22 of this Bill of Indictment and further alleges that:

28. On or about April 3, 2021 through August 20, 2021, in Mecklenburg County within the Western District of North Carolina and elsewhere, the Defendant,

### (2) TIJEMA BROWN

with the intent to defraud, did knowingly and intentionally devise a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice to defraud did transmit and cause to be transmitted, by means of wire communications in interstate commerce, any writing, signal, picture, and sound, *to wit*, the submission of electronic loan and loan forgiveness applications to Lender 1 and the SBA, note documents to the same, wire transfers, and other electronic financial transactions.

All in violation of Title 18, United States Code, Section 1343.

### COUNT THREE
(Wire Fraud – 18 U.S.C. § 1343)

29. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 22 of this Bill of Indictment and further alleges that:

30. On or about April 14, 2021 through September 13, 2021, in Mecklenburg County within the Western District of North Carolina and elsewhere, the Defendant,

### (3) ANTIONETTE ROUSE

with the intent to defraud, did knowingly and intentionally devise a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice to defraud did transmit and cause to be transmitted, by means of wire communications in interstate commerce, any writing, signal, picture, and sound, *to wit*, the submission of electronic loan and loan forgiveness

9

applications to Lender 1, Lender 2, Lender 3, and the SBA, note documents to the same, wire transfers, and other electronic financial transactions.

All in violation of Title 18, United States Code, Section 1343.

## COUNT FOUR
(Wire Fraud – 18 U.S.C. § 1343)

31. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 22 of this Bill of Indictment and further alleges that:

32. On or about April 25, 2021 through August 24, 2021, in Mecklenburg County within the Western District of North Carolina and elsewhere, the Defendants,

**(1) TIAWANA BROWN**
**(2) TIJEMA BROWN**

with the intent to defraud, did knowingly and intentionally devise a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice to defraud did transmit and cause to be transmitted, by means of wire communications in interstate commerce, any writing, signal, picture, and sound, *to wit*, the submission of electronic loan and loan forgiveness applications to Lender 1 and the SBA, note documents to the same, wire transfers, and other electronic financial transactions.

All in violation of Title 18, United States Code, Section 1343.

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

    a. All property which constitutes or is derived from proceeds of violation set forth in this Bill of Indictment; and

    b. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a).

The Grand Jury finds probable cause to believe that the following property is subject to forfeiture on one or more of the grounds stated above:

A forfeiture money judgment in the amount of $124,165, such amount constituting the proceeds of the violations set forth herein.

A TRUE BILL

_____
GRAND JURY FOREPERSON

RUSS FERGUSON
UNITED STATES ATTORNEY

*[signature]*
_____
MATTHEW WARREN
ASSISTANT UNITED STATES ATTORNEY